Arnold Hernandez, #210109
Law Office of Arnold Hernandez
PO Box 1419
1650 Linda Vista Dr. #101
San Marcos, CA 92079
(760) 471-4624

Attorney for plaintiff(s)

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

B.I.P CORPORATION,

    PLAINTIFF,

V.

MITEC TELECOM, INC.,

    AND DOES 1 TO 30,

    DEFENDANT.

Case No. 3:08-cv-313

B.I.P. CORPORATION'S COMPLAINT AGAINST MITEC TELECOM, INC.

MISAPPROPRIATION OF TRADE SECRETS; FRAUD AND DECEIT; INTERFERENCE OF PROSPECTIVE ECONOMIC ADVANTAGE;  BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

Judge: Marilyn L. Huff

FIRST AMENDED COMPLAINT

DEMAND FOR JURY TRIAL

Plaintiff alleges:

## I. FIRST CAUSE OF ACTION

## MISAPPROPRIATION OF TRADE SECRETS-CUSTOMER LIST

1. Defendant Mitec Telecom, Inc., at all times mentioned was a Canada corporation qualified to do business in California.

2. Plaintiff B.I.P. Corporation is a business entity incorporated in California with its primary office in the City of San Marcos, County of San Diego, among other things BIP resells

telecommunications products.

3. The transaction, occurrence, or series of transactions took place in the City of San Marcos, County of San Diego.

4. Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1 through 30, inclusive, and therefore sues defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

5. Plaintiff purchases and resells of telecommunications equipment and defendant was a manufacturer and its primary supplier of telecommunications equipment.

6. On or about October 24, 2006, defendant Mitec, through its agents or employees, personally met with plaintiff in the City of San Marcos and negotiated for the sale of telecommunications products with plaintiff, BIP.

7. On or about October 24, 2006, plaintiff entered into an oral agreement with defendant Mitec, whereby among other things, defendant agreed to and promised to continue to sell telecommunication products to plaintiff BIP; (2) to set aside warehouse space ("cage") in Canada where it would store BIP's telecommunication products; (3) to ship out product as needed by BIP to BIP or its customers;  (4) defendant expressly warranted to BIP that each product would be in working condition and free of defects and agreed to extend the warranty to each consumer purchasing product from BIP for a period of 2 years  following delivery of the product and 29 months for product purchased and stored in plaintiff's cage prior to shipping.

8. In 2007 plaintiff purchased over $5 million dollars worth of telecommunications equipment from defendant for resale to its customers.

9. On or about January 8, 2007, defendant Mitec's vice-president of sales had a personal meeting with BIP in the City of San Marcos, California following complaints for defective product, and admitted the product delivered had defective power supplies.

10. On or about May, 2007, plaintiff requested defendant recall all product and test it to insure it was free of defects.  Defendant, and each of them, assured plaintiff the product had been tested, repaired and returned to plaintiff's cage.

11.  On or about June, 2007, plaintiff requested all product in plaintiff's cage be shipped to

plaintiff's primary place of business in San Marcos.

12. If the product had been in good working condition with warranties it would have had a fair market value of approximately $2 million dollars.

13. Plaintiff was in possession of a customer list with customers that regularly purchased telecommunications equipment from plaintiff. The list was a result of a substantial amount of time, energy, and money on the part of plaintiff.

14. Plaintiff's customer list had economic value in that it contained information not generally known to the public or the trade and in that it represented years of research and communication and relationship building. Plaintiff made reasonably sure the information remained secret by providing only that information those employees who needed the information to perform their duties.

15. On or about May 2007, defendant, and each of them, requested plaintiff's customer list on the promise that it would use the list to insure it did not compete with plaintiff.

16. Plaintiff's customer list was a trade secret which merited legal protection from defendant's misappropriation in that defendant solicited the customers of plaintiff with the intent to injure plaintiff; (2) plaintiff is informed and believes and thereon alleges that defendant sought out certain preferred customer whose trade is particularly profitable and whose identities are not generally known to the trade; (3) in the telecommunications industry a customer ordinarily patronizes only one vendor once the products have been deemed to be reliable; (4) established business relationships between customers and the plaintiff normally continue unless interfered with.

17. On or about July 2007 defendant, and each of them, misappropriated the above-described plaintiff's customer list by promising not to compete with plaintiff's customer if plaintiff provided the list of customers. Shortly after receipt of plaintiff's list of customers defendant, and each of them, started soliciting business from all those customers on the list. Defendant, and each of them, knowingly and intentionally solicited business from plaintiff's customers by offering the same telecommunications equipment purchased by plaintiff for resale but also by offering the same equipment at lower prices, and cancelling all warranties on any telecommunications

- 3 -

equipment sold by plaintiff.

18. As a proximate result of defendant's, and each of them, actions plaintiff suffered economic harm in that it cannot resell the telecommunications equipment that would have had a fair market value of approximately $2 million dollars and also lost future sales and profits to all customers on its customer list.

## II. SECOND CAUSE OF ACTION -FRAUD AND DECEIT

19. Plaintiff hereby incorporate by reference and realleges all of the allegations contained in paragraphs 1 through 18.

20. On or about May 2007 BIP demanded all product be recalled and tested before any additional shipments be made.

21. On or about July of 2007, defendant, and each of them, represented to BIP that all the products had been recalled taken from storage, tested, free of defects, and returned to plaintiff's cage.

22. Defendant's, and each of them, representation to BIP, that all product had been tested and was free of defects was false.

23. Defendant, and each of them, knew or should have known that the representation was false when it made it, or made the representation recklessly and without regard for its truth, because the product continued to arrive "dead on arrival," with defective power supplies.

24. Defendant, and each of them intended for plaintiff to rely on the representation, because it knowingly asserted the product was free from defects, but it continued to arrive with defects.

25. Plaintiff, reasonably relied on defendant's representation that the product had been tested and in working order, and had no reason to believe defendant would be mis representing a material fact.

26. On or about June 2007, BIP demanded all product in plaintiff's cage in defendant's warehouse be shipped to plaintiff's place of business, where the product was tested and where much of the product was found to be defective.

27. As a direct result of BIPs reliance on defendant, and each of them, plaintiff has suffered an economic loss because it received defective product with a fair market value of substantially less

- 4 -

1  than what plaintiff paid defendant and in its defective condition it could not be sold.

2  28. Defendant, and each of them, represented to plaintiff that all product would be free of defects
3  for a period of 2 years and 29 months for product purchased and stored in plaintiff's cage prior to
4  shipping. and that the warranty would extend to plaintiff's customers.

5  29. Defendant, and each fo them, made a false representation about the product warranty on
6  product sold to plaintiff for resale, because effective August 2007, defendant, and each of them,
7  notified plaintiff that all warranties on product purchased for resale by plaintiff were void.

8  30. Defendant knew that the representation was false when it made it, or made the representation
9  recklessly and without regard for its truth, because defendant specifically informed plaintiff it had
10  cancelled all warranties on all product purchased from defendant, and each of them.

11  31. Defendant, and each of them, knew the representation was false when it made it, or made the
12  representation recklessly and without regard for its truth, with the intent of inducing plaintiff to
13  purchase its products.

14  32. Defendant, and each of them, intended for plaintiff to rely on the representation as it was a
15  means of securing sales.

16  33. Plaintiff reasonably relied on the representation since it had no reason to believe otherwise.

17  34. As direct and proximate result of defendant's mis representation, plaintiff suffered economic
18  harm, in that it could not resell the product purchased and had to incur the cost and expense of
19  repairing defective product.

20  35. Plaintiff's reliance on defendant's, and each of them, representation was a substantial factor
21  in causing harm to plaintiff in that plaintiff would not have purchased defendant's product if had
22  known it would not honor its warranty and now plaintiff cannot resell the product.  Plaintiff has
23  incurred liability and has spent substantial sums in warranty claims for defective product repairs.

24  36. Defendant, and each of them, represented to plaintiff that it would not compete with plaintiff,
25  but that it needed plaintiff's customer list to insure it would not compete directly with plaintiff.
26  Defendant, and each of them, promised that it would not solicit sales from plaintiff's customers.

27  37. Defendant's, and each of them, representation was false, and in fact defendant, and each of
28  them, commenced soliciting sales from plaintiff's customers almost immediately following

- 5 -

receipt of plaintiff's customer list.

38. Defendant, and each of them, knew the representation was false when it made it, or made the representation recklessly without regard for its truth, as it started soliciting plaintiff's customers almost immediately.

39. Defendant, and each of them, intended for plaintiff to rely on the representation, as it would have been the only means of obtaining plaintiff's customer list and would have resulted in control of a list customers that had been regularly purchasing product manufactured by defendant.

40. Plaintiff reasonably relied on defendant's representation as it was the only means of insuring defendant would know who it could not solicit sales from in direct competition with plaintiff.

41. As a proximate result of defendant's mis representation, plaintiff suffered economic harm in lost sales, lost profits, lost future profits, and loss of business reputation.

42. Plaintiff's reliance on defendant's representation was a substantial factor in causing it harm, since plaintiff would not have provide its customer list if it had known defendant intended to use it to compete directly with plaintiff instead of refraining from competition with plaintiff.

43. Defendant, and each of them, made false promises to plaintiff, by promising that (1) its product would be free of defects; (2) a warranty would apply for 2 years and 29 months for product purchased and stored in plaintiff's cage prior to shipping. and that it would extend to its customers; (3) that it would use plaintiff's customer list to refrain from competing directly with plaintiff, in return plaintiff agreed to purchase telecommunications equipment from defendant and provided its list of customers to defendant.

44. Defendant's, and each of them, promises to plaintiff, were important to the transaction as it provided an incentive for plaintiff to purchase product from defendant and it assured plaintiff that defendant would not compete directly with plaintiff for sales to its customer.

45. Defendant, did not intend to perform these promises when made, because it shipped defective product, it cancelled the warranties and it misappropriated plaintiff's customer list and solicited plaintiff's customers almost immediately.

46. Defendant, and each of them, intended for plaintiff to rely on these promises, as it was a means of securing sales from plaintiff and plaintiff's customers.

47. Plaintiff reasonably relied on defendant's promises as the promises did not seem out of the ordinary and seemed reasonable to achieve the objectives.

48. Defendant did not perform the promised acts, and delivered defective product to plaintiff or on plaintiff's behalf, cancelled all warranties, and misappropriated plaintiff's customer list.

49. As proximate result of defendant's, and each of them, failure to perform as promised, plaintiff suffered economic harm from loss of sales, future sales, profits, future profits, and loss of business reputation.

50. Plaintiff's reliance, on defendant's promise was a substantial factor in causing its harm, as plaintiff would not have entered into the agreement with defendant to purchase telecommunications equipment and would not have provided its customer list, had it known defendant did not intend to keep its promise.

51. Defendant's, and each of them, conduct was fraudulent and therefore plaintiff is entitled to exemplary damages.

### III. THIRD CAUSE OF ACTION

### INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

52. Plaintiff hereby incorporate by reference and realleges all of the allegations contained in paragraphs 1 through 51.

53. From on or about January 2003 through on or about June 2007 plaintiff had an economic relationship with customers that through June 2007 exceed 100 customers. These customers that regularly purchased product from plaintiff every year with sales often reaching $100,000 per customer per year, and the probability of future purchases and therefore an economic gain was almost assured.

54. Defendant, and each of them, knew of the economic relationship between plaintiff and its customers, as defendant knowingly and intentionally asked for plaintiff's list of customers and promised not to compete with plaintiff and promised not to solicit sales from these customers.

55. Defendant, and each of them, intended to disrupt the relationship between plaintiff and its customers, and did so shortly after receipt of plaintiff's list of customers by intentionally contacting each customer and soliciting sales.

56. Defendant, and each of them, engaged in wrongful conduct by misappropriating plaintiff's trade secrets, by breaching the covenant of good faith and fair dealing, by obtaining plaintiff's customer list through fraud and deceit, and by breaching the covenant not to compete with plaintiff.

57. Defendant, and each of them, misappropriated plaintiff's trade secrets by using plaintiff's list of customers to disrupt the relationship between plaintiff and its customers by directly soliciting plaintiff's customers and offering lower prices to plaintiff's customers.

58. Defendant, and each of them, breached the covenant of good faith and fair dealing, by knowingly and intentionally disrupting the economic relationship between plaintiff and its customers.  Defendant, and each of them, actively solicited plaintiff's customers, offered lower prices to plaintiff's customers than to plaintiff, and cancelled all warranties on product in inventory with plaintiff.

59. Plaintiff's customers would have continued to purchase telecommunications equipment from plaintiff, but for defendant's, and each of them, disruption of the economic relationship between plaintiff and its customers.

60. As a proximate result of defendant's, and each them, actions plaintiff's customers purchased telecommunications equipment from defendant, and each them, instead of plaintiff and thereby plaintiff suffered an economic loss.

61. Defendant's, and each of them, conduct was a substantial factor in causing economic harm to plaintiff.

62. If Defendant had not interfered with plaintiff's customers, plaintiff would have enjoyed the benefits of its economic relationship with its customers in the form of continued sales and profits.

63. As a direct and proximate result of defendant's, and each of them, actions plaintiff suffered economic harm in the form of lost sales, profits, loss of business reputation, and loss of marketability of inventory in plaintiff's possession.

64. Defendant's, and each of them, conduct was malicious in that defendant, and each of them, engaged in conduct that was intended by defendant, and each of them, to cause injury to plaintiff.

65. Defendant's, and each of them, conduct was malicious in that defendant, and each of them,

engaged in conduct that was despicable conduct which was carried on by the defendant, and each of them, with a willful and conscious disregard of the rights of plaintiff, in that defendant and each of them, (1) knowingly and intentionally misappropriated plaintiff's trade secrets by contacting each customer on plaintiff's customer list and soliciting sales; (2) by offering lower prices to plaintiff's customers than to plaintiff; (3) by cancelling all warranties on any product sold by plaintiff; (4) by knowingly and intentionally shipping defective product; and (5) by knowingly and intentionally misrepresenting the merchantability and quality of the product.

66. Defendant's, and each of them, conduct was fraudulent, in that defendant, and each of them, intentionally misrepresented through deceit and concealment a material fact known to the defendant with the intent on the part of the defendant, and each of them, and knowingly and intentionally concealed (1) their true intentions about plaintiff's customer list; (2) the merchantability of the product; and (3) the warranties and thereby deprived plaintiff of its exclusive list of customers, the saleability of plaintiff's inventory, and created liability to plaintiff on product sold and thereby caused economic injury to plaintiff. Had plaintiff known that it was the intent of defendant, and each of them, to compete with plaintiff, then plaintiff would not have provided the list of its customers or purchased telecommunications equipment from defendant for resale.

67. Defendant, and each of them, intentionally misrepresented the request for plaintiff's list of customers with the intent of using the list to obtain plaintiff customers instead of competing with plaintiff for the same customers and therefor caused injury to plaintiff in the form of lost sales, lost profits, and loss of business reputation.  Had plaintiff known that it was the intent of defendant, and each of them, to compete with plaintiff, then plaintiff would not have provided the list of its customers.

68. Defendant's, and each of them, conduct was malicious and fraudulent, and therefore plaintiff is entitled to exemplary damages.

## IV. FOURTH CAUSE OF ACTION
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

69. Plaintiff hereby incorporate by reference and realleges all of the allegations contained in

- 9 -

paragraphs 1 through 68.

70. On or about October 24, 2006 defendant, and each of them, entered into an oral contract with plaintiff, which was later modified. Among other things the contract provided for (1) a 2 year warranty from defendant, and each of them, on all products purchased by plaintiff and a 29 month warranty for product purchased and stored in plaintiff's cage prior to shipping; (2) defendant promised all product would be free of defects; (3) it provided a covenant not to compete with each other, and (4) it required plaintiff purchase approximately $2.8 million dollars worth of telecommunications equipment from defendant.

71. Plaintiff, performed substantially all of the significant things that the contract required including the purchase of approximately $5 million dollars worth of product from defendant.

72. All conditions required for defendant's performance had occurred, but defendant, and each of them, voided all warranties, knowingly and intentionally shipped defective product, misappropriated plaintiff's customer list and competed directly with plaintiff.

73. Plaintiff has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the contract

74. Defendant, and each of them, interfered with plaintiff's right to receive the benefits of the contract, by (1) misappropriating plaintiff's customer list and directly competing with plaintiff's customers and thereby depriving plaintiff of virtually all sales and profits; (2) by shipping defective product and cancelling all warranties and thereby exposing plaintiff to liability on all defective product forcing plaintiff to bear the risk defendant was to bear.

75. As a proximate result of defendant's, and each of them, actions plaintiff suffered economic harm in the form of lost sales, lost profits, lost future sales, lost future profits, lost of its customer base, expose to liability, and loss of business reputation.

WHEREFORE PLAINTIFF PRAYS FOR RELIEF AS FOLLOWS:

1. For damages according to proof;

2. For exemplary and punitive damages;

3. For reasonable attorney fees and costs incurred; and

4. For any other and further relief as the court may deem proper.

Dated:_____         /s/_____
                                      Arnold Hernandez,
                                      Attorney for plaintiff(s).

## CERTIFICATE OF SERVICE

I, Arnold Hernandez, attorney for plaintiff B.I.P. Corporation, certify that on March 19, 2008, I caused to be mailed, first-class, postage prepaid, a copy of the foregoing PLAINTIFF'S FIRST AMENDED COMPLAINT to the following:

David R. Sugden
Call, Jensen, et al.
610 Newport Center Dr. Suite 700
Newport Beach, CA 92660

/s/ _____
    Arnold Hernandez

- 11 -